**EVANS et al. v. UNITED STATES.**

**Civ. No. 2865.**

United States District Court
W. D. Louisiana, Shreveport Division.

Sept. 26, 1951.

See also, D.C., 10 F.R.D. 255.

Booth, Lockard & Jack and Whitfield Jack, Shreveport, La., for plaintiffs.

Wm. J. Fleniken, Shreveport, La., for defendant.

DAWKINS, Chief Judge.

The claimants here are the surviving husband and the tutor of the two minor children of Thelma Frederick Pendleton Evans, who bring this suit against the Government of the United States, as authorized by the Federal Tort Claims Act, Title 28 U.S.C. § 2671 et seq., for damages alleged to have been caused by negligence in the operation of an airplane near Barksdale Air Base in Bossier Parish, Louisiana. The cause of action is under Article 2315 of the Louisiana Civil Code, reading as follows:

"Every act whatever of man that causes damage to another, obliges him by whose fault it happened to repair it; the right of this action shall survive in case of death in favor of the children, including adopted children, or spouse of the deceased, or either of them, and in default of these in favor of the surviving father and mother or either of them, and in default of any of the above persons, then in favor of the surviving brothers and sisters, or either of them, for the space of one year from the death; provided that should the deceased leave a surviving spouse, together with minor children, the right of action shall accrue to both the surviving spouse and minor children; provided further, that the right of action shall accrue to the major children only in those cases where their (there) is no surviving spouse or minor child or children.

\* \* \* \* \* \*

"The survivors above mentioned may also recover the damages sustained by them by the death of the parent or child or husband or wife or brothers or sisters or adoptive parent, or parents, or adopted person, as the case may be."

The complaint alleges, as to the minors, that the older, Gertie Jean Frederick, was born out of wedlock on December 11, 1936; that her father was James Mickle, and that, both at the time of conception and birth there was no impediment to marriage between the said parents; that on December 27, 1937, the said mother was married to Willie Pendleton, Sr., and that the second child, Willie Pendleton, Jr., issue of that marriage, was born on October 11, 1938; that Pendleton, Sr., died on June 17, 1943, and on December 23 of the same year, the mother married the complainant, Ardis Evans. The complaint then proceeds to allege informal acknowledgment by the mother, in a manner other than that prescribed in Article 203 of the Louisiana Civil Code, which has been recognized in certain cases for the purpose of inheritance from the mother by a child born out of wedlock.

The complainants further allege that at the time of her death, decedent was picking cotton on a plantation near the airfield and from which and other employments she contributed an average of $25 per month to the support of her said children; further, that the airplane which killed deceased was being operated by the military forces of the Government, acting within the scope of their duties, but not in combat, and that the plane crashlanded in the midst of cotton pickers, including deceased, in the field at that time. The acts of negligence alleged were stated in the following manner: That having no direct information as to the true cause of the crash of the plane, complainants would invoke the doctrine of res ipsa loquitur, and in the alternative, "on the basis of heresay and newspaper accounts," it was charged a) that the right motor was defective; b) that the remainder of the plane including the left motor was defective, obsolete, overloaded and worn out; c) that there was failure to properly inspect the whole plane before beginning the flight; d) that the right propeller was not properly feathered, all of which was known or easily ascertainable; e) that the pilot and co-pilot were negligent "in not

seeing the large group of cotton pickers and taking the necessary action to avoid striking them"; and g) that there was failure on the part of the crew to handle "the plane so that it would continue to fly * * * long enough to avoid striking deceased."

Plaintiffs further allege they have been denied access to the reports of the Air Force before filing the suit.

Ardis Evans demands $7,500 for "loss of love, affection and companionship" and $750 for funeral expenses of the deceased; and the tutor for the minor children claims a total of $15,000, or $7,500 each, for the loss of love, companionship and support.

In a second supplemental complaint, it is alleged that the plane was "so constructed, it would fly satisfactorily on one engine in the event the other engine became disabled," and that:

"(h). The switches, instruments, indicators, gauges, heating and cooling systems, propellers, both motors and accessories were defective, and out of order before the plane took off, which facts were known or should have been known to defendant.

"(i). While taking off, but before becoming airborne, the right motor was backfiring and otherwise giving notice of trouble but the pilot ignored this."

In its answer, the defendant admits the crash of the plane and the death of the said wife and mother, but denies any fault or liability on the part of the Government.

It also filed separately a motion to dismiss the claim of the older or illegitimate child, on the ground that the complaint alleged the subsequent marriage of the mother to one other than its father, and the legitimate birth of the second child, Willie Pendleton, Jr. thereby excluding the first borne altogether. This motion was duly argued and submitted, but has not been ruled upon.

The court is of the view that, by a fair preponderance, the evidence establishes the following facts:

On November 4, 1949, a twin-engined Army airplane, known as a C–82, on proper orders, started a flight from Barksdale Air Base on the west side of the Red River in Bossier Parish, near the cities of Shreveport and Bossier City to Mountain Home AFB, Idaho. It was in charge of the following officers: 2nd Lt. R. W. McKenzie, Pilot; 2nd Lt. D. G. Simpson, Co-Pilot; and Sgt. J. W. Robinson, Engineer; and others.

On starting and before leaving the runway, the right engine backfired and about two minutes after clearing the ground, the co-pilot reported it on fire. The pilot himself "feathered" this engine, decided to return to the base, and for that purpose turned the plane to the right, or into the disabled engine. The plane immediately began to lose speed and height and, within a few seconds, crashed in the cotton field, bellylanding, and killing plaintiffs' decedent and another cotton picker, as well as one of the crew.

The plane was allowed to take off without proper inspection at the time, other than a cursory one by the pilot, who signed the "Exceptional Release" without insisting that it be inspected by a maintenance officer, as might have been done. The maintenance crew had previously inspected the plane without discovering the defects subsequently mentioned. It developed that the carburetor balance line of the right motor was broken at the carburetor and that the primer line to No. 18 cylinder was broken at the spider. When the engine was primed at the start, raw gas was discharged into the nacelle, and it was this escaping fuel which caught fire. As soon as the pilot was informed of the fire, the engine was "feathered," and its power to help keep the plane aloft was lost. The pilot left further handling of the disabled engine to the co-pilot and engineer. The pilot thought he could still gain altitude and keep in the air long enough to return to the field on the left engine. He did not know the true weight of the plane with its load, but thought it was less than it actually was. It rapidly lost both speed and altitude, which caused the plane to crash in the manner described above. The engine was also dangerously close to the time when a mandatory overhaul was required.

The maintenance crew or those responsible ·for seeing that the plane was in safe condition for the trip failed or neglected to give it the kind of inspection and check which would have revealed the broken lines. The pilot was without reasonably sufficient training, instruction and experience to be placed in charge of this large and heavily loaded machine, and this caused him to erroneously believe he could keep it in the air on one engine when so close to the ground; and he made a serious error in turning it to the right into the disabled engine, instead of to the left and the one which was still functioning. These easily discernable defects and lack of experience, proper instruction and training of the pilot, plus insufficient inspection, were responsible for the accident.

### Conclusions of Law.

■ The failure to properly inspect and the allowing of the plane to be started on the journey contemplated was negligence on the part of the officers and employees of the defendant responsible therefor.

It was negligence for those in authority to allow this insufficiently trained and informed pilot to undertake command and responsibility for the flight. The things which he did, as above described, were not what was required of a reasonably prudent, properly trained and experienced pilot under the circumstances. It was the duty of those in charge of the air base and plane to see that only qualified persons were in charge of this large and heavy aircraft.

These findings of negligence as the proximate cause of the accident make it unnecessary to apply the doctrine of res ipsa loquitur.

■ The law is settled that an illegitimate child having the status of Gertie Jean Frederick has no cause of action and cannot recover in a case of this kind where there are one or more legitimate children. Arts. 200 and 918, La. Revised Civil Code.

### Quantum.

■ The amounts claimed by the husband of $8,250 and $7,500 by the legitimate child, are not excessive, but are supported by the evidence. They should accordingly recover as prayed for.